Jimmy **SINAJINI, et al., Plaintiffs**

**and**

**The Navajo Nation; The United States of America, et al., Plaintiffs–Intervenors,**

**v.**

**BOARD OF EDUCATION OF THE SAN JUAN COUNTY SCHOOL DISTRICT, et al., Defendants.**

**CIvil No. 2:74–CV–346–S.**

United States District Court, D. Utah, Central Division.

April 24, 1997.

Eric P. Swenson, Monticello, UT, for Plaintiffs.

Herbert Yazzie, Kimberly A. Rozak, Frank M. Seanez, Navajo Nation Dept. of Justice, Window Rock, AZ, for Plaintiff-Intervenor Navajo Nation.

Lawrence R. Baca, U.S. Dept. of Justice, Civil Rights Div., Washington, DC, for Intervenors–Plaintiffs.

William T. Evans, John S. McAllister, Utah Attorney General's Office, Salt Lake City, UT, for Amicus State of Utah.

Brinton R. Burbidge, Burbidge Carnahan Ostler & White, Salt Lake City, UT, Randy T. Austin, Von G. Keetch, Kirton & McConkie, Salt Lake City, UT, Lafayette R. Anderson, Daniel G. Anderson, Anderson & Anderson, Monticello, UT, for Defendants.

SAM, District Judge.

## 1997 ORDER AND CONSENT DECREE

The Court has reviewed the 1997 Agreement of Parties and has found that relief shall be granted in accordance with it.

It is therefore ORDERED, ADJUDGED, and DECREED:

1. The Court approves and adopts the 1997 Agreement of Parties dated April 24, 1997, which is hereby incorporated by reference into this Order and Decree.

2. The District denies any violation of any state or federal law or any wrongdoing. There has been no judicial determination as to the validity of the claims against the District.

3. The District is hereby generally enjoined from violating the Equal Protection Clause of Fourteenth Amendment, Titles IV and VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–6 and § 2000d, and its implementing regulations 34 C.F.R. §§ 100 et. seq., and the Equal Education Opportunity Act of 1974, 20 U.S.C. § 1703.

4. The parties and all persons acting in concert or participating with them are hereby ordered to comply with the provisions of the 1997 Agreement of Parties.

5. The Court shall retain jurisdiction over this action pursuant to paragraph 6 of the Agreement of the Parties.

6. The Utah State Board of Education and the individual members of the Board as designated by the original *Sinajini* complaint are hereby dismissed without prejudice, and the current State Board of Education and the State Superintendent of Public Instruction shall be permitted to participate as Amicus Curiae.

7. San Juan County and individual members of the San Juan County Commission are hereby dismissed without prejudice.

## 1997 AGREEMENT OF PARTIES

The United States; the Navajo Nation; the individual *Sinajini* Plaintiffs, the Plaintiff–Intervenors, and the Plaintiff Class as defined in paragraph 6 below (collectively referred to hereafter as the "*Sinajini* Plaintiffs"); Taylor Chee, Herman Chee, Jr., and Araidena Chee, by and through their parents and general guardians, Herman Chee, Sr., and Julie Chee (collectively referred to hereafter as the "Chees"); the Board of Education of San Juan County School District; and the individually named Defendants, together with the State of Utah, desire, as parties to this and related pending and potential litigation, to resolve this matter by means of this 1997 Agreement of Parties ("1997 Agreement") as set forth below. Accordingly, the parties, through their respective counsel and subject to the approval of this Court, hereby agree as follows:

1. The parties to this agreement are: (1) Board of Education of San Juan County School District (hereafter "District"); (2) the Utah State Board of Education and State Superintendent of Public Instruction as Amicus Curiae (hereafter "State"); (3) the Chees; (4) the *Sinajini* Plaintiffs; (5) the Navajo Nation (hereafter "Nation"); and (6) the United States of America (hereafter "United States"). Parties 4–6 are collectively referred to hereafter as parties plaintiff.

2. The parties desire to put the litigation behind them. All prefer to work together cooperatively to identify creative and constructive solutions to the educational issues that exist rather than continue the litigation process. All parties recognize the commitment of all other parties to act reasonably to see that Native American children, as well as all other children residing in San Juan County School District, receive an appropriate

education and an equal educational opportunity and acknowledge that their collective, cooperative efforts, rather than litigation, will most likely result in the delivery of such educational services to all District students.

3. Moreover, the parties are interested in utilizing resources, energy, and time on the delivery of quality educational services to District students, and in dealing with educational issues as they exist today and not in resolving disputes about issues that may have occurred over the last twenty (20) years.

4. The pending *Sinajini* case was limited to a determination of the District's compliance with the provisions of the "Agreement of Parties" entered 5 August 1975 ("1975 Agreement") and subsequently approved by the Court and incorporated into a Consent Decree ("1975 Consent Decree").

5. The 1997 Agreement and corresponding Order and Consent Decree ("1997 Order and Consent Decree") are intended to resolve the dispute concerning compliance with the 1975 Agreement and related issues, including paragraphs 11–16 of the United States' Complaint–in–Intervention filed in this action, the issues raised in the referral dated February 10, 1994 from the Office for Civil Rights, United States Department of Education to the United States Department of Justice concerning the District's compliance with Title VI of the Civil Rights Act of 1964, and the issues raised in the October 31 1996 letter from the United States Department of Justice to the District.

The District denies any violation of any state or federal law or any wrongdoing as alleged above. The parties acknowledge that there has been no judicial determination as to the validity of the claims and defenses raised by the parties as reflected in this paragraph.

6. The parties agree that this action is properly maintained as a class action pursuant to Rules 23(a) and (b)(2) of Federal Rules of Civil Procedure. The class shall consist of present and future Native Americans who are eligible under applicable statutes for educational services from the District. The *Sinajini* Plaintiff Class shall be notified of this

settlement as ordered by the Court in approving the 1997 Agreement or as otherwise required by law. This Court shall retain jurisdiction over this matter until such time as the parties agree or the Court determines upon application by any party, that the parties have, or any party has, completed their obligations hereunder, including obligations under paragraph 3 of the 1997 Order and Consent Decree, and that the District has maintained a system of equal educational opportunity for a period of time that will allow the Court to determine that a system of equal educational opportunity will continue.

7. The 1997 Agreement shall be incorporated into and enforced by the 1997 Order and Consent Decree to be entered by the Court.

8. In *Meyers v. Board of Educ.*, 905 F.Supp. 1544 (D.Utah 1995), this Court determined that the District, the State, the United States, and the Nation each has a duty with respect to the education of Native American children residing in the District. The nature and scope of these duties were not fully set forth in the Court's decision. The District expresses its desire and commitment to provide equal educational opportunities to all its students and to maximize the resources available to the District for purposes of funding District programs. The reference to the duties of others should not be interpreted as any attempt to minimize the District's duties and its commitment to the Native American students in its schools, but a recognition of the role others can and should play.

9. The parties hereby agree that given the age of the 1975 Agreement and Consent Decree, the changed circumstances within the District since the date of their execution, and disputes regarding compliance with and the meaning of several provisions of the 1975 Agreement and Consent Decree, the 1975 Agreement and Consent Decree are hereby superseded, dissolved, and replaced by this 1997 Agreement and corresponding Order and Consent Decree.

**PENDING LITIGATION**

10. The Chees hereby agree voluntarily to dismiss without prejudice the *Chee* (Case

No. 94–C–386–J) case. The parties also agree to stay any further enforcement proceedings in the *Sinajini* matter until such time as the parties have completed their efforts otherwise to resolve disputes as outlined herein. The parties agree that any subsequent proceedings shall be governed by the 1997 Agreement and limited to enforcement of the 1997 Agreement and 1997 Order and Consent Decree and not the 1975 Agreement or 1975 Consent Decree. Legal proceedings shall not be reinstated or commenced by any party until such time as the parties have complied with the dispute resolution provisions of paragraphs 32–34 of this Agreement and all other relevant provisions of the Agreement; provided. however, that disputes raised by the United States shall not be governed by the process established by paragraphs 32–34 of this Agreement until approved plans are in place pursuant to the work of the committees established by paragraph 31.

11. The parties plaintiff shall dismiss without prejudice the State Board of Education and the individually named State Board members as designated in the original *Sinajini* complaint from the *Sinajini* action, provided that the current State Board of Education and the State Superintendent of Public Instruction shall be Amicus Curiae to the 1997 Agreement.

## CONSTRUCTION PROJECTS AND FUNDING

12. The District shall hold a bond election in May 1997. The District, the Nation, and the *Sinajini* Plaintiffs shall use their best efforts to maximize the prospects of the voters of San Juan County authorizing the issuance of the bonds. The District's best efforts shall comply with and be limited by Utah law. If the issuance of bonds is approved in that election, portions of the proceeds therefrom shall be used to add additional permanent classroom facilities at Whitehorse High School; Monument Valley High School shall also be improved by expanding the existing library facilities and adding additional classroom facilities. Nothing in this Agreement shall require the District to use all proceeds from the May 1997 bond election, if approved. on projects mentioned herein or at Navajo Mountain.

13. If the voters of San Juan County fail to authorize the issuance of bonds in the May 1997 election, (1) the building projects identified in paragraph 12, to be built from bond funds. will revert to projects considered from district pay-as-you-go resources and will be subject to prioritization by the Board and the availability of funds; and (2) the construction of the permanent secondary facility at Navajo Mountain will continue to be governed by paragraph 7(a)(1) of the Agreement of Parties in *Meyers v. Board of Education*, Civil No. 93–C–1080J.

14. Regardless of whether the voters authorize the issuance of bonds in the May 1997 election, the parties to this Agreement, other than the United States and to the extent allowed by law, shall use their best efforts to obtain finding from Congress and appropriate federal or state agencies for (1) the construction of an elementary school at Monument Valley sufficient in size to accommodate Arizona and Utah students residing in the Monument Valley/Oljato areas; (2) additional construction funding to provide space for Arizona students at the high school at Navajo Mountain; and (3) the development of a sufficient water source at Navajo Mountain fully to meet the needs of the schools and community. All parties acknowledge, however, that without substantial financial contributions from the United States, the Nation, or the State of Arizona, including its school districts, or any combination of those entities, the facilities at Navajo Mountain and potential elementary facility at Monument Valley shall be designed to accommodate only the Utah student population. If an elementary school is constructed at Monument Valley, the District shall also use its best efforts to continue to operate the Mexican Hat Elementary School if educationally and financially feasible. The District agrees to make available to Arizona students all reasonably available space, if any, in the temporary and permanent facilities to be constructed at Navajo Mountain and the potential elementary facility at Monument Valley. If within a reasonable time, not less than 24 months nor greater than 36 months, funds for the construction projects identified in this paragraph have not been obtained from other sources,

including but not limited to the State of Utah, the Navajo Nation, and the United States, the Plaintiffs retain the right to pursue relief in court after compliance with the provisions of paragraphs 32–34 of this Agreement.

15. The Navajo Nation agrees to use its best efforts to provide water and power at reduced rates for the Mexican Hat and potential Monument Valley elementary schools, so as to offset the utility related expenses of operating two schools as opposed to one.

16. If the effort to secure federal funds or other revenue for the purpose of constructing an elementary school at Monument Valley is not successful, the parties retain the right to pursue legal action relative to the construction of an elementary school at Monument Valley after compliance with paragraphs 32–34 of this Agreement. Nothing in this Agreement shall be construed as imposing any duty or obligation to construct an elementary school at Monument Valley on the District, the State, the Nation, or the United States, that does not exist under current federal, state, or tribal law. The parties hereto agree that no statements, representations, positions, opinions, documents, discussions, minutes or other potential evidentiary items generated by any party after the execution of this Agreement in connection with the effort to secure federal funding for an elementary facility at Monument Valley shall be used in any subsequent legal proceedings of any type. Such items shall be considered evidence of conduct or statements made in compromise negotiations.

**BILINGUAL EDUCATION**

17. The District shall administer and provide an appropriate educational program for students who are limited English proficient ("LEP") as required by applicable statutes and regulations. In formulating a bilingual or LEP program the District shall take into account the spirit and provisions of paragraphs 33 and 34 of the 1975 Agreement and the large traditional Navajo population in the District.

18. The District and the other parties shall establish a bilingual education committee of at least two and no more than six members to review the District's existing bilingual program. The "bilingual committee" shall be established and function pursuant to paragraph 31 of this Agreement.

19. The bilingual committee established pursuant to paragraphs 18 and 31 shall, in a constructive, collegial, and cooperative effort, review the District's existing bilingual program and determine whether it is acceptable to the parties. If the plan as written is deemed acceptable, the bilingual committee shall agree upon it as outlined in paragraph 31. The plan shall contain express provisions for an implementation timetable and provide for monitoring and evaluation. The bilingual committee may, if deemed necessary and advisable by a majority of the committee, recommend revisions to the District's existing bilingual program.

20. The District shall also use its best efforts to recruit, hire, provide in-service training to, and retain teachers and teachers' aides certified or trained in bilingual education for the appropriate language group. The parties recognize the difficulties in hiring such personnel because of the limited pool of such personnel.

21. If an "approved plan" is established pursuant to paragraph 31(e) of this Agreement, and if prior to a declaration of compliance pursuant to paragraph 6 of this Agreement the District intends substantially to revise the approved bilingual program or any of its elements, including but not limited to the method for identifying LEP students, the method or methods of instruction, the teacher training program, or the monitoring or evaluation plan, the District shall hold public hearings prior to approving or adopting any substantial change in the approved plan. Such hearings shall be conducted in regular board meetings noticed as provided by law. Specific written notice shall be provided at least thirty (30) days prior to the hearing to the Attorney General of the Navajo Nation, to the Navajo Nation Division of Education, to the United States, and to *Sinajini* Plaintiff Class counsel.

22. If the process set forth in paragraphs 17–21, and 31 does not result in an approved bilingual plan, the District will continue to use and implement the plan currently in use

by the District with appropriate modifications and adjustments as the District deems necessary. All parties shall retain the right to pursue relief in court after compliance with the provisions of paragraphs 32–34 of this Agreement; provided, however, that the United States shall not be required to comply with the provisions of paragraph 32–34 with respect to relief sought pursuant to this paragraph.

## CULTURAL AWARENESS PROGRAM

23. The District agrees to continue to incorporate a Native American cultural awareness component into its curriculum and to formulate a more formal cultural awareness plan. The District shall seek the assistance of the Navajo Nation through its Division of Education and the San Juan County Navajo community in formulating a cultural awareness plan.

## SPECIAL EDUCATION

24. In conjunction with the State, the District shall provide and administer a special education program as required by applicable state and federal statutes and regulations. Nothing in this Agreement is intended to create additional rights or limit the rights and obligations of any party or individual under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and the rules and regulations of the State of Utah and federal agencies promulgated pursuant thereto.

25. The District and the parties plaintiff shall establish a "Special Education Committee" of at least two and no more than six members. The committee shall be established and function pursuant to paragraph 31 of this Agreement.

26. The special education committee shall review the District's special education program and, if necessary, suggest revisions to the District-wide program. If an approved District special education plan is not established, pursuant to paragraph 31, the District shall establish and adopt a formal plan, and all other parties shall retain their rights to pursue relief in court after compliance with the provisions of paragraphs 32–34 of this Agreement; provided, however, that the United States shall not be required to comply with the provisions of paragraph 32–34 with

respect to relief sought pursuant to this paragraph.

## ACCOUNTING PROCEDURES AND EXPENDITURES

27. The District and the parties plaintiff shall each designate one individual to work together in a cooperative effort with the District Business Administrator to make the District's financial information and records more understandable to the public. The District, through its Board of Education, shall consider and, in its sole discretion, implement appropriate policies or procedures, consistent with existing state law and regulations, pursuant to the recommendations that result from this effort.

## CURRICULUM

28. The District shall provide and administer a curriculum consistent with applicable statutes and regulations. The parties recognize that allocation of resources and student demands play an important role in curriculum offerings in the District. With this understanding, the District shall make educational programs available so that all students are offered an equal educational opportunity and shall use its best efforts to provide equal access to educational services and courses that are substantially similar, considering the unique circumstances of each District facility and individual community needs.

29. The District and the other parties shall establish a Curriculum Committee of at least two and not more than six members. This committee shall review the curriculum offered in the District and make recommendations for revisions to District curriculum if necessary. The curriculum committee shall be established and function pursuant to paragraph 31 of this Agreement.

30. If the Curriculum Committee and the parties cannot establish an approved curriculum plan pursuant to paragraph 31, the parties shall retain the right to pursue relief in court after compliance with the provisions of paragraphs 32–34 of this Agreement.

## COMMITTEE CREATION AND DEADLINES

31. The parties recognize that this 1997 Agreement will be of little real and lasting

benefit in advancing District programs and educational efforts if an atmosphere does not exist that allows full, frank, and unfettered exchange of ideas, information, and opinions among the individuals that will be involved in reviewing District programs. In an effort to establish an atmosphere most conducive to the improvement of educational programs, the parties agree to the following framework for the functioning of the referenced three committees. The Bilingual, Special Education, and Curriculum Committees shall be established and operate according to the following guidelines:

(a) The number of individuals to serve on each committee shall be determined by the parties consistent with the provisions of paragraphs 18, 25, and 29, but shall be an even number.

(b) The District shall appoint half of each such committee, and the parties plaintiff shall appoint half of the individuals to serve on each committee by a process to be determined solely by them. The parties shall agree in writing as to the number of individuals to serve on each committee by 15 May 1997. The parties shall then designate in writing the individuals to serve on each such committee by 1 June 1997. The District shall designate an individual to serve as the chairperson of each committee. The District designee shall be responsible to organize, coordinate, and schedule the meetings and other work of each committee, unless and until a different chairman is selected by the Committee.

(c) Each committee shall use its best efforts to complete a "committee plan" as defined by subparagraph 31(e) by 1 September 1997, and in any event shall complete its work by 2 January 1998, unless the parties mutually agree to the extension of such deadlines for one or more of the committees.

(d) The District and the other parties shall, if necessary, each compensate their own designees serving on each committee.

(e) Each committee shall, if possible, agree to a recommended plan of action for the District in its respective area by a vote of at least a simple majority (51% or more) of its members. A plan so approved by a committee shall be referred to as a "committee plan." Each committee plan shall be submitted to the Board of Education of San Juan County School District, the Navajo Nation, the United States, and to the *Sinajini* Plaintiff class through their counsel. The Board shall have authority to hold public meetings to review committee plans. The Board may reject or approve each committee plan or any part thereof. If the Board rejects a committee plan, or any part thereof, the plan shall not be binding on the District. The United States, *Sinajini* Plaintiff class, and the Navajo Nation shall also have the right to approve or reject any committee plan. Only committee plans approved by all parties shall be *"approved plans"* binding on the parties hereto.

(f) Failure to reach an approved plan by 15 March 1998 in any area shall allow the parties or any of them to seek relief through the courts after compliance with the provisions of paragraphs 32–34 of this Agreement for each issue for which an approved plan has not been reached, unless all the parties agree in writing to an extension of such deadlines for any committee or committees; provided, however, that the United States shall not be required to comply with the provisions of paragraph 32–34 with respect to relief sought pursuant to this paragraph. Unless expressly set forth herein, nothing in this 1997 Agreement shall be construed to preclude the Board of Education or designated District personnel, separate and apart from any of the committees, from developing, improving, or implementing any District program or plan. All plans shall comply with all applicable laws.

## DISPUTE RESOLUTION PROCESS

32. As an important aid to achieving the goal that educational resources be utilized in educational endeavors and not to fund further litigation and also recognizing that the litigation process often destroys the cooperative spirit that must exist among those re-

sponsible for and most interested in the educational process in the District, the parties hereby agree to the following dispute resolution process.

33. A Dispute Resolution Team ("Resolution Team") shall be established. The Resolution Team shall consist of six members, three of which shall be designated by the District, and three of which shall be designated by the parties plaintiff. The District and the parties plaintiff shall identify in writing the individuals to serve on the Resolution Team no later than I September 1997. Compensation, if any, to be paid to such members shall be paid by the respective entity designating the individual to be remunerated. The District shall designate an individual to serve as chairperson of the Resolution Team. An official address for contacting the team shall be established, as well as a method for timely notification of all Team members.

34. No action shall be taken in any court by any party concerning any issue which is the subject of this Agreement until there is compliance with this paragraph; provided, however, that disputes raised by the United States shall not be governed by the process established by paragraphs 32–34 of this Agreement until approved plans are in place pursuant to the work of the committees established by paragraph 31. Any complaint, concern, dispute or other disagreement between parties to this Agreement shall be submitted in writing to the Resolution Team.[1] Nothing in this paragraph shall supersede the terms of those certain leases between the Navajo Nation and the Board of Education of the San Juan School District entitled "Lease Agreement for 9–12 School Building" and "Lease Agreement for District Housing" at Navajo Mountain. The Resolution Team shall have thirty (30) days to hold a hearing or meeting or otherwise confer, and, absent extraordinary circumstances, thirty (30) additional days to make recommendations, including where necessary to the Board of Education, on any issue. Each party shall have the right to accept or reject the recommendation. If the Resolution Team fails to make a written recommenda-

tion for action within sixty (60) days, absent extraordinary circumstances, or if any party to a dispute submitted to the Resolution Team rejects the recommendation, all parties shall be free to pursue relief in court regarding the specific matter raised. If a party fails to accept a recommendation in writing within thirty (30) days of receipt thereof, it shall be deemed rejected.

## CONTINUING COOPERATION AND MISCELLANEOUS PROVISIONS

35. The parties hereby agree that adoption of this 1997 Agreement will not result in a comprehensive and lasting settlement unless the implementation efforts provided herein are successful. The parties acknowledge the importance that the participants in the implementation efforts be free, to the maximum extent attainable, to participate in an atmosphere of full and complete interchange, without concern of fear that whatever is done or said will be used in subsequent court proceedings if settlement does not result. To promote this atmosphere, the parties agree that acts done and statements made in attempting to develop settlement plans or obtain construction funds shall not be admissible in evidence in subsequent court proceedings. Further, where the settlement process requires the designation of individuals to work together in committees in an attempt to work out an acceptable settlement each party should have wide latitude in designating the individuals to participate on behalf of the designating party. Such designated committee members, if later called as expert witnesses, may not refer to statements made, acts done, or documents obtained by or from other parties during the cooperative efforts described in this document.

36. The parties shall negotiate agreements concerning costs and attorneys fees in connection with the *Chee* and *Sinajini* litigation and the pending United States' matters as identified in paragraph 5 above. If they are unable to reach an agreement, any party may file and serve an appropriate motion for costs and attorneys fees by July 1, 1997, and the matter shall be submitted to the Court

---

1. Nothing in this Agreement shall relieve any party of its obligations or affect the process to be followed to resolve a dispute arising under Individuals with Disabilities Education Act.

for resolution after appropriate briefing and any further proceedings deemed necessary by the Court. This provision shall not be viewed as any indication that fees are or are not due in this matter.

37. The District agrees to use its best efforts, upon appropriate, reasonable written request, to provide any party with information relating to compliance with this 1997 Agreement. Any objection to such a request shall be in writing within twenty (20) days of receipt of such request.

38. Any of the provisions of this Agreement may be amended by mutual agreement of the parties or upon a showing to the court that the circumstances underlying any particular provision have changed substantially. Such requests shall be made in writing to all parties. If after a reasonable time not to exceed thirty (30) days, the parties have not agreed to an amendment, the requesting party shall be free to file a motion with the Court requesting a change in the Agreement.

39. If any provision of this Agreement is deemed unenforceable by the Court for any reason, it shall not affect the enforceability of any other provision hereof.

40. The State, as Amicus Curiae, agrees to use reasonable efforts according to applicable law to monitor the District's educational efforts in the areas of bilingual education, special education, and curriculum.

41. The parties acknowledge that this Agreement is the product of negotiation and represents a good faith settlement of disputed issues. Nothing in this Agreement should be construed as an admission or acknowledgment in any way that the District has not complied with the provisions of the 1975 Agreement and the Consent Decree or that the District is not in compliance with existing state or federal law in any regard.

42. This Agreement constitutes the complete agreement between the parties. It has been reached in arm's length negotiations. All parties have had the opportunity to review it, comment on its provisions. change

provisions as desired, and otherwise participate in its preparation.